LOUISVILLE AND NASHVILLE RAILROAD COMPANY, PLAINTIFF IN ERROR, VS. ANNIE E. YNIESTRA, DEFENDANT IN ERROR.

1. An instruction which assumes facts alleged therein to have been proven is erroneous, and is properly refused.

2. Negligence on the part of a plaintiff which contributes to the injury of which he complains, is a matter of defence which the defendant must set up and maintain by proof, unless the plaintiff's own

evidence in support of his cause of action shows that a presumption of contributory negligence is plainly inferable from said evidence, in which case the burden of proof is shifted, and it becomes the duty of the plaintiff to remove such presumption.

3. Notwithstanding the fact that a person may be guilty of a negligent act from which injury results to another, yet if the person injured could by exercising ordinary prudence have prevented said injury, or by his own act he contributed to said injury, he cannot recover damages resulting therefrom.

4. The injury must be solely caused by the negligence of the defendant. It is not enough that it should be essentially so caused.

5. Ordinarily the question of contributory negligence is a question of fact for a jury under instructions from the court, but when there is no contradiction in the evidence, and the facts are undisputed, and the conclusion and inference to be drawn from it is indisputable, involving only a common instinct of mankind—self-preservation—it becomes a question of law.

6. When a railroad track by authority of law is laid in a public thoroughfare, the right of the company owning said track to operate trains thereon is superior to the right of the general public to walk along said track, but having a superior right thereon does not relieve the company from liability to damage for injury to persons caused solely by its negligence in using said track.

7. When a person voluntarily walks on and along the track of a railroad laid in a public thoroughfare, which he knew was used as a switch yard on which locomotives were passing to and fro night and day, where the walking on either side of said track was as good as on the track, and in doing so is run over by a passing train and killed, he has, by the failure to exercise ordinary care and prudence, directly contributed to his own misfortune, and his representative cannot recover from the company using said track damages therefor.

Writ of error to the Circuit Court for Escambia county.

The facts of the case are stated in the opinion.

*W. A. Blount* for Plaintiff in Error.

There are but two errors assigned :

1. The refusal to give instructions asked for by the plaintiff in error and marked 16—b. and c.

2. The refusal of the court to grant a new trial.

Both of these assignments of error, so far as they will be insisted upon here, are based upon the contention that the evidence was such as to show contributory negligence on the part of Yniestra, or at least to throw the burden upon defendant in error to show that there was not such negligence.

The consideration of these questions divides itself into three parts.

1. Does the evidence show contributory negligence on the part of Yniestra which should prevent defendant in error from recovering ?

2. If not, does it raise such an inference of negligence on his part as required defendant in error to prove due care, and if so, has she proved it ?

3. The jury having determined the question of contributory negligence in the negative, can this court review such finding, and if so, under what circumstances ?

The facts are as follows :

The death of Yniestra occurred in the switch yard of defendant. The part of the yard where he was killed was in the public street. At that point there were two parallel lines running north and south, about eight feet apart. Between them, and on both sides of them for fifteen or twenty feet and for some distance north and south, the walking was good, better than on the track. About 300 or 400 feet north from where he was killed was located a switch by means of which an engine could be transferred from one of the parallel tracks to the other. At this part of the yard there was no other way of getting from one to the other. The parallel track to the east was called the Pensacola &

Atlantic track, or track No. 2, and the one to the west the Louisville & Nashville main track, but they were used in common by both roads. To the south of where he was killed, the P. & A. track diverged into several switches, switch No. 2 being about 300 feet south from the point of killing. To the north of the switch, where the P. & A. and L. & N. tracks came together, were sidings upon which cars were left. Yniestra, for about three years, had been in the habit of going to and from his home twice a day along these tracks and through this switch yard, and had frequently passed while the trains were switching. Engines switched over this switch yard and at this point continuously, day and night. The streets to the east of this on which the railroad was were open as thoroughfares. Yniestra lived to the northeast.

Upon the morning of the killing between four and half past five o'clock, when it was cloudy and dark, or just between daylight and dark, the switch engine of the defendant took a car from the side track, or switch, to the south of the point of killing and proceeded up the P. & A. track (or track No. 2,) to the switch connecting the P. & A. and the L. & N. Upon the engine were Levi Miller, the engineer, Joe Rosique, the fireman, O. F. Godfrey, the yard-master, Henry Mathena, switchman, and James McMahon, switchman. The engine passed through the switch (Mathena having gotten off and thrown it,) and Godfrey got off and went north to the siding to take the number of some cars on the siding. The headlight of the engine was burning brightly. While Godfrey was proceeding up the track he met Yniestra walking southward on the L. & N. main track. He was then about from 90 to 120 feet from the engine. The engine passed through the switch backing down the L. & N. track to a cattle pen on that track about 500 or 600 feet from

the switch. McMahon got off and went over to switch No. 2. The engine proceeded north on the L. & N. track to the switch. Just before it reached the switch Mathena, who was on the engine, saw Yniestra walking down (south) on the P. & A. track about as fast as a man usually walks. He was about six or eight feet away. Mathena got off, threw the switch, the engine passed through, Godfrey, who had taken the number of the cars, got on, the engine backed down on the P. & A. track, Mathena got on, the engine continuing to back. Shortly afterwards, when she had gone about 300 or 400 feet, (by the scale) from the switch, Yneistra was struck and killed. The engine was going at the time about three or four miles an hour, " not faster than a man can walk." She was rolling, the engineer having shut off steam so that the valves could be oiled. The bell was ringing continuously at the time. When the engineer felt the jar under the engine he reversed the engine and stopped it, and Yniestra was found dead about fifteen feet in front of the engine.

McMahon, standing at No. 2 switch, about 300 feet south of where Yniestra was killed, heard the bell ringing all the time while the engine was passing up the L. & N. track and while she was backing down the P. & A., and as she was backing through the switch he saw the engine, i. e. he saw the cab light.

There was no light on the rear of the tender, nor was there any lookout there. Pine wood was piled on the tender to such a height as to prevent the engineer from seeing any object that was a short distance in front of the tender. An object as large as a man could be seen 30 or 50 yards off. There was no cowcatcher on the engine, and Miller swears that it is not usual for switch engines to have them.

## JANUARY TERM, 1886.          705

L. & N. Railroad Co. v. Annie E. Yniestra—Argument of Counsel.

I submit that these facts clearly establish negligence on Yniestra's part which contributed to his death.

Of course it will be admitted by defendant in error that no matter what negligence there was on the part of the employes of the plaintiff in error, if the deceased by his own negligence contributed proximately to his own death the defendant in error should not recover, unless the employes were negligent recklessly, wantonly or willfully, after their discovery of the peril of Yniestra. Rorer on Railroads 1010, n. 2, 1013 n. 2, 1026 n. 2; Jacksonville, &c., R. R. Co. vs. Chappell, 21 Fla.

There is no pretence that the employes ever discovered his peril, so if his negligence contributed proximately to his death defendant in error cannot recover. The doctrine of contributory negligence, as set forth above, is the admitted doctrine in this State and in all the States of the Union save three—Illinois, Georgia and Kansas.

Negligence is defined as the failure to show care and skill which the situation demands. R. R. Co. vs. Lockwood, 17 Wall., 383.

Or, in other words, the failure to do what a reasonable and prudent man would ordinarily have done under the circumstances of the situation, or doing what such a person under the circumstances would not have done. R. R. Co. vs. Jones, 95 U. S., 439.

If we adopt the view most favorable to Yniestra, we must assume that he continued walking down the track until he was killed, and that he did not get off and then get on again. If so, he was negligent both in what he did and in what he did not do—in choosing a pathway on the track under the circumstances and in not getting off at the proper time.

45

Was he negligent in going on the track under the circumstances ?

There was no necessity of his going on the track. The streets were open as thoroughfares from his home, there was safe walking space between the tracks, better than on them, and there was good walking on both sides. The risk which he took then was gratuitous.

And the circumstances were such as to inform him of this risk. The place where he was walking was a switch yard where switching was being done continually day and night. He knew this fact for he had been passing over the same locality for three years, and had seen the passenger train come in and switching done frequently at the same time of the morning as that at which the accident happened. The passenger train was due behind him about this time and he had a right to assume that it was on time. 39 N. Y., 358.

Besides this, the circumstances on this particular morning were such as to put him on his guard and to make his going on the track, without assuring himself of a want of danger, carelessness. In other words, the surroundings were dangerous, and it behooved him before getting on the P. & A. track to ascertain positively that there was no danger. He saw the engine before he got to the P. & A. track, its headlight shining full in his face. He saw that it was a switch engine. He knew that this engine traversed the whole of the yard. He saw this engine backing on the L. & N. He again saw it when it passed him just as he got on the P. & A., and he again saw that it had left the car and had none attached to it, and it was again emphasized that it was a switch engine. He saw that it was going northward. He knew that the main tracks lay to the northward and that the switch engine had nothing to do on the main tracks. He knew that the switches

lay to the southward and that the only way to reach them was by backing down on the track upon which he chose to walk.

Moreover, it was dark, so that his sense of sight was less available than usual, and the fact that it was so should have made him more careful in putting himself into a position in which there might be a danger which he would not have all the usual means of guarding himself against. Rorer on Railroads, 1061–2 n. 2.

If it be said, as in the court below, that the danger was not certain, the answer is that it was evident that there might be danger and that he was negligent in choosing a path in which there might be peril, in preference to taking one equally· convenient and accessible, and in which there would have been none. He took the risk, the result was against him and he cannot complain. Railroad Co. vs. Houston, 95 U. S., 697.

An ordinarily prudent man would not have chosen, without necessity, the more dangerous path.

He had the opportunity of knowing the danger, and, neglecting that opportunity, there should have been no recovery. Rorer on Railroads, 1,030–1,031; 43 Penn. St., 449; 33 Ind., 335.

A person does not exercise due care who goes upon the track in view of an approaching train. 24 N. Y., 430–440; 1 Vroom, 188–203; 70 Ill., 102–108.

And the same is true when he has reasonable ground to believe that the train will approach.

Here, Yniestra knew that the engine could only go back on the track which it was leaving when he last saw it, or go north on the main track, or come on the track upon which he chose to walk. The first course was improbable, the second entirely out of the usual course of things, but the third was the probable and natural sequence.

The inference of want of exercise of due care for his own safety seems irresistible.

But, furthermore, he was negligent in remaining on the track.

I assume that no *less* a degree of care is required of a person who is walking on the track and making a highway of it than is required of one who is about to enter upon the track for the purpose of crossing it. The requirements are of the same character, but in the latter case the obligation to be alert is a continuing one, and of stringent force during each moment of remaining on the track.

But one about to cross must, before crossing, "stop, look and listen" for approaching trains. 39 N. Y., 227 ; 33 Ind., 335 ; 24 N. Y., 430–40 ; Rorer on Railroads, 1010, n. 2, 1061, n. 1, 1062.

And the looking must be both up and down the road.

The same obligation being upon Yniestra, it was his duty, the danger of trains being both before and behind him, and that of which he should have had a reasonable apprehension being behind, to stop or turn his head at such intervals as was necessary to insure his safety.

He did neither of these things. An object as large as a man could have been seen from thirty to fifty yards away, and an engine looming against the sky, presumably, at a greater distance. If he was standing still when he was struck, then the engine was approaching him for 500 or 600 feet before it struck him. If he was walking along at the pace which he employed when last seen, the engine, moving but little faster, must have been in sight of him for some time before he was struck. Whether he was standing still or moving the engine was in the scope of his vision a sufficient time, if he had looked, to have enabled him to get off twenty times. We must infer that he did not look.

If, taking into account all the circumstances, he must have seen the train if he had looked, it is to be inferred that he did not look. Pierce on Railroads, 346, n. 2 ; 75 N. Y., 273.

Nor did he listen. The bell was ringing continuously all the time. There was nothing to interfere with his hearing. He is not shown to have had any defect in it, and if he had his carelessness in putting himself in the dark in the path where he knew trains passed, without being able to hear them, would effectually bar the action. He could have heard the bell from the minute when the engine started back on the P. & A. track. McMahon heard it, though he was from eight hundred to one thousand feet off, when Yniestra was at no time more than five hundred feet. *McMahon heard it when Yniestra was between him and the engine..*

Of course we have no positive proof that he did not exercise his senses, but if there is nothing to show whether he did or not, and it appears that if he had he would have perceived the approach of the engine, it will be presumed that he did not. 39 N. Y., 358 ; R: R. Co. vs. Houston, 95 U. S. ; 22 Mich., 165.

The alternative here is fatal to the action. Yniestra was bound to use both the senses of sight and hearing, and if either could not be available the obligation to use the other is stronger. R. R. Co. vs. Miller, 25 Mich., 274.

If he did not use them he did not exercise due care, and his contributory negligence should defeat the action. If he did use them, he saw and heard the engine, and his remaining on the track was the grossest negligence.

Though this negligence may have arisen from absent mindedness it does not the less amount to contributory negligence, such as to bar a recovery. Pierce on Railroads, 345, n.8 ; 30 N. J., 188 ; 25 Mich., 274.

While it may not be universally true that a traveler

must stop, look and listen, but that a failure to do so may be, under some circumstances, excused, yet the excuse must appear from the evidence. It does not appear here.

His negligence both in going on the track and in remaining on it seems to be almost mathematically demonstrable, and demonstrated above.

A case very analogous to this in its facts is Wilcox vs. Rome, &c., R. R. Co., 39 N. Y., 358.

But it is said that the above rules and argument are not applicable because this happened upon a track laid in the street, where Yniestra lawfully was.

But when a track is laid in the street the rights of the public to the use of that track are subordinate to those of the railroad company, and persons walking on the track must keep out of the way of trains. Zimmermann vs. Hannibal, &c., R. R. Co., 71 Mo., 476; Pierce on Railroads, 342, n. 2; 53 Penn. St., p. 255; 18 A. & E., R. R. Cases, 59. .

But if this be not so in its broadest extent, let us examine it in the view most favorable to defendant in error. I am aware that there are authorities which say that the rights of the public and of the railroad company are equal, but this I apprehend is not correct. The primary right to the use of a public street is in the public, but that public for its own convenience impresses different portions of it with different uses. A portion is set apart for sidewalks, a portion for vehicles, and in some instances, a portion for railroad tracks. The cases of each of them are distinct, the public surrendering its absolute right to use the whole street for any purpose which it might see fit in favor of a separation of the uses. A man driving a wagon has no right on the sidewalk, and a foot traveler has no right in the portion set apart for conveyances except for the purpose of crossing. So neither the foot passenger nor the ve-

hicle has any right on the railroad track except at crossings, and then only for the purpose of crossing.    53 Penn. St., p. 255.

It is impossible for two persons or things to have an equal right to occupy the same space at the same time, and the only sense in which two persons could have such an equal right would be that the first occupant should have the right of possession.    But it cannot be contended that a person getting on the track has a right of occupancy as against a railroad train.    If not, then the rights are not equal. What it meant, I apprehend, is that there is a duty of care on each side—on the part of the railroad company to avoid injury to a person on the track, and on the person to get out of the way.    If there is a failure on both sides to exercise this care, then the plaintiff cannot recover because of contributory negligence.

So the fact that the railroad is in the street does not absolve the foot passengers from the duty to be careful.    69 Ill., 174 ;    39 N. Y., 358 ;    see R. R. Co. vs. Houston, 95 U. S.

There can be no greater rights, and no more absolution from the duty to exercise care, in the case of a traveler along the railroad between crossings in a street than at public crossings themselves, and yet the authorities already cited show that great care by the traveler is required at such crossings.    See as to relation of railroads and travelers : Rorer on Railroads, 531 *et seq.* ; 24 N. Y., 440 ; 1 Vroom, 203 ; 45 N. Y., 664 ; 70 Ill., 108 ; 53 Penn. St., p. 255 ; 39 N. Y., 358.

So that, in any event, whether Yniestra's right to be upon the track were subordinate to that of the train, or whether it was the duty of each to exercise care towards the other, defendant in error should not have recovered,

because Yniestra did not exercise due care, and thus contributed to his death.

2. But, if we have failed to demonstrate clearly that there was contributory negligence on Yniestra's part, yet the evidence is in such a position that the judgment should be reversed.

I conceive the better opinion to be that the burden is upon the defendant to show contributory negligence. But this burden may be shifted and I insist has been in this case.

The presumption is of due care on both sides, but when a person is found in a position necessarily more or less perilous, into which he must have gone by his own voluntary act, it lies upon him to explain that his position there is consistent with due care. 35 Ohio St., 627; 28 ib., 241; 13 A. & E. R. R. cases, 645; 79 Penn. St., 211; 97 Mass., 278. Or, in other words, when the facts on the face of the transaction indicate that the accident probably might not have occurred if the "person injured" had been in "the exercise of proper care and watchfulness on his part," the plaintiff must prove due care. Redfield on Railways, Vol. II, p. 615 ; Redfield on Railways, Vol. II, p. 253, §15 and note 2; Beatty vs. Gillman, 4 Harris, 563 ; 35 Maine, 423.

In the case at bar, even if the court does not find the evidence of negligence so conclusive as to authorize it to disturb the verdict of the jury upon that ground, yet the judgment should be reversed because the evidence is such as to raise a grave suspicion as to Yniestra's exercise of care—and it devolves upon defendant in error to remove it, and she has not done so.

Instructions b and c set forth the facts constituting negligence and should have been given. 31 Ala., 501.

3. The last question is whether the court will determine

the question of negligence in opposition to the verdict of the jury, and if so under what circumstances.

That the courts do not hesitate in overturning the verdicts of juries and declaring that the person injured was guilty of contributory negligence, when the jury said that he was not, is evidenced by hundreds of cases decided by all the courts of the Union. Many of them heretofore cited for other purposes are in point. R. R. Co. vs. Jones, 95 U. S., 439 ; 33 Ind., 335 ; 49 Penn. St., 60 ; 70 Ill., 108.

The question is when will they do so ? When the facts are not in dispute or there is no conflict of evidence. Rorer on Railroads, 1054, 1081 ; 27 Barb., 221 ; 27 Barb., 528 ; 16 A. & E. R. R. cases, 363 ; 15 A. & E. R. R. cases, 410, 439 ; Pierce on R. R., 312, 316, note 5.

When the material facts admit of no other rational inference but that of negligence. Rorer on Railroads, 1056, note 4.

When the facts admit of no other inference. 31 Ala., 501.

When there are inferences which amount to conclusions from complicated facts. Rorer on Railroads 1056, note 1.

Applying the most stringent of these rules the evidence is such as to warrant and require the court to reverse the finding of the jury.

There is no dispute as to the facts and no conflict of evidence, there are no complex inferences to be drawn, for the facts relied on to prove negligence—the going and the remaining on the track—stand out boldly, and can admit of no other inference but that of negligence. This seems to be fully developed by the preceding argument.

But if more specific omissions which amount in law to negligence are required, they will be found in his failure to use his senses of sight and hearing.

He is bound to use them and his failure to do so is neg-

ligence, and should be so pronounced as matter of law. R. R. Co. vs. Miller, 25 Mich.; R. R. Co. vs. Hunter, 33 Ind., 335; R. R. Co. vs. Heleman, 49 Penn. St., 60; 70 Ill., 108; Rorer on Railroads, 1031, note 2; Pierce on Railroads, 316, note 5.

The corrective functions of the courts in setting aside verdicts of juries on questions of negligence is essential to the administration of justice. Pierce on Railroads, 312.

I submit that the evidence does not show that the plaintiff below was entitled to a verdict, but shows on the contrary that she was not. The court has power to, and should so declare.

J. C. Avery and C. B. Parkhill for Defendant in Error.

The plaintiff in error assigns as error:

1st. The refusal of the court below to give instruction marked 16.

2d. The refusal to give instructions marked b.

3d. The refusal to give instructions marked c.

4th. The refusal to grant a new trial.

Plaintiff in error abandons all other exceptions, and all grounds on which a new trial was prayed for, except the 1st, 2d and 7th of the motion.

First assignment:

Instruction 16 was properly refused.

It requires the court to instruct the jury that the facts in the case show contributory negligence on the part of the deceased, and do not show negligence on the part of the agents of the company, after discovery of the peril of the deceased.

Such an instruction could not be given in Florida, while the statute provides as it now does, that " it shall be the duty of the judge presiding * * * to charge the jury only upon the law of the case; that is, upon some point or

points of law or exceptions to evidence arising in the trial."
McClellan's Digest, 338, §34; Act March 2, 1877, §1.

This instruction if given would have taken from the
jury the consideration of the evidence. It assumes conclu-
sively that the evidence shows certain *facts*, and those facts
thus declared by the court to have been proven, and not
even recited in the instruction, are taken as a basis for the
declaration that in law certain consequences must follow.
The province of the jury could not be more completely
and arbitrarily usurped by the court.

This court has held " that it is error to charge that there
is no conflicting evidence in the case." Metsger vs. The
State, 18 Fla., 482.

The instruction prayed for here goes even further. It
tells the jury not only (in effect) that there is no conflicting
evidence, but also that they must find that the evidence es-
tablishes certain facts (in the mind of the court, but not ex-
pressed to the jury) and that those facts are conclusive
proof of negligence on the one side and absence of negli-
gence on the other.

Whether a party has been negligent in a given case is of
course a question of mingled law and fact—1st, whether a
particular act has been performed or omitted, and 2d,
whether the performance or omission of this act was a
breach of legal duty. Shear. & Red. on Neg., §11.

Some courts have gone so far as to take from the jury
cases involving questions of negligence and have decided
them for themselves. But such a course would never be
proper under such a law as ours.

The question of negligence must always be under our
practice one of fact for the jury, under the instruction of
the court, as to care or want of it, in either party, accord-
ing to the circumstances of the case. Ibid, §11, note; 47
Penn. St., 300.

Even were such an instruction permissible under our law under any circumstances, the circumstances of this case would not warrant it.

Second assignment:

Instruction (*b*) was properly refused.

1st. It involves the proposition that plaintiff must prove that deceased was in the exercise of due care. But the rule of law is that such care is presumed. Shear. & Red. on Neg., §31; Oldfield vs. R. R. Co., 3, E. D. Smith, 103; Penn. R. R. Co. vs. Weber, 76 Penn., 157.

If deceased was not in the exercise of due care then he was guilty of contributory negligence. But it was decided in this case, on demurrer to the declaration, in accordance with reason and the weight of authority, that contributory negligence is a matter of defence to be charged and proved by the defendant. Shear. & Red. on Neg., §§43 and 46, and note; Cooley on Torts, 42, note; 15 Wall., 401; 22 Am. Reps., 714; 11 Am. Reps., 443; 48 Cal., 409; 12 Bush., 41; 46 Penn. St., 316; 66 Penn. St., 30; 5 Dutch., 544; 24 Ala., 112.

Therefore this charge could not be given because it in effect states that absence of contributory negligence (a negative) must be proven by the plaintiff.

2d. It involves the proposition that the defendant had a *right* to use as a switch yard the place where the killing occurred, without leaving it to the jury to determine whether that locality was a street of a city; and, if so, whether the defendant had ever been authorized to use it as a switch yard.

3d. It involves the proposition that, if the facts detailed in the hypothetical case existed, then, without considering any other evidence in the case, the jury must find for defendant.

One of the most important features of the evidence is en-

tirely omitted, *i. e.*, that the locality where the deceased was run over and killed was in a public street of the city. There can be no hypothetical case presented fully corresponding with this case, from which that element is omitted.

The court below in the charge which forms part of the bill of exceptions, gave great prominence to this fact. The charge was not excepted to and is unexceptionable.

The rule of law is that travelers have the same right to walk upon a highway where a railroad track is laid that they would have if the track was not there. Shear. & Red. on Neg., §491 ; Fash. vs. R. R. Co., 1 Daly, 148 ; William vs. R. R. Co., 3 Bosw., 314.

If they have a right to walk there, then their being there cannot raise the presumption, or be evidence of want of due care; in other words, they are not trespassers as they would be if the track was not in a highway.

Hence, in a case where it is claimed that deceased was killed while on a track laid along a public highway, and there is evidence to show the fact, and no evidence to the contrary, it would not be proper to give such an instruction as is prayed for here without qualifying it so as to enable the jury to understand that they must also determine whether the killing was in such highway; and in the event that it was, that then the other circumstances detailed in the charge would not necessarily require a verdict against the plaintiff.

4th. It is very doubtful whether, under a statute like ours, requiring the Judge to charge only on points of law arising on the trial, it would be proper to give such a charge as this, even if it embraced all of the facts of the case.

Third assignment :

Instruction *c* was properly refused.

1st. It involved the proposition that if certain facts

enumerated were found by the jury they must find that deceased was guilty of contributory negligence, notwithstanding the existence of other facts, which should have been included in the hypothetical case, prominent among which was the uncontradicted claim that the track was laid along a highway.

2d. It, in effect, declares that the presumption of due care on part of deceased would be conclusively overcome by the existence of hypothetical circumstances detailed, without permitting the jury to take into consideration other facts proven before them, but not embraced in the hypothetical case, which would enable them to conclude that the presumption of due care had not been overcome.

Most of what has been said above, with reference to instruction b, is also applicable to this instruction.

The obvious purpose of both is, first, to induce the court to say that the facts enumerated make a *prima facie* case of contributory negligence; and second, that there are no facts in the case, not detailed in the hypothesis, which, if added to the hypothetical facts, would change the legal consequence.

Before this court can say that either instruction should have been given to the jury, it must find that there was nothing in evidence not in the hypothesis which was material. Because the prayers both say the " plaintiff cannot recover," if the hypothetical facts are proven.

Fourth assignment:

There was no error in overruling the motion for a new trial.

The first, second and seventh grounds of the motion, which are all that are here insisted upon, may be considered together:

Appellee contends that the charge of the court and spe-

cial instructions given at the request of the appellant comprise a correct statement of the law of the case, and all that was properly prayed for in the instructions asked for by appellant and refused by the court. The two important questions were these:

1st. Must plaintiff allege and prove absence of contributory negligence?

2d. Is one who walks upon a railroad track laid along a highway necessarily a trespasser?

The court below answered both in the negative, and is sustained by the authorities cited above.

If the court did not err as to the law, there is no doubt about the correctness of the verdict of the jury.

It was admitted by defendant's counsel at the trial below, (which was certified to by the Circuit Judge,) that defendant was guilty of negligence, provided the court was correct in its ruling as to the right of deceased to walk upon a railroad track laid along a street of a city. And such negligence was clearly proved

The engine which did the killing was a switch engine which never turned, but went backward as often as forward; and yet there was no cow-catcher or headlight on the end of the tender, though both were as necessary there as at the front end of the locomotive. The wood was piled up so high in the tender that it prevented the engineer from seeing an object on the track near at hand, while it was too dark to see such object far away. Though there were several men on the locomotive, and though deceased had been seen on the P. & A. track, no one was on the lookout in the direction in which they were moving and in which he had been seen, The engine which did the killing was an engine of the Louisville and Nashville Railroad Company and was on the track of that company when it passed the deceased, he being on the track of the Pensacola and At-

lantic Railroad company, and no notice was given that the engine was to leave the track of the company by which it was being run to go down upon that of the other company where deceased was walking. Even if he heard the engine coming he would hardly expect that she had been switched so as to pursue him without notice being given him ; and the two tracks were so near together that the sound of the approaching engine would fail to indicate that she had been switched a few feet to the eastward of the line on which she had been moving when he had seen her going north, up the track.

It seems quite clear that there was such negligence on the part of the defendant, both as to conduct of agents and equipment of engine, as to create a legal responsibility, unless the deceased himself contributed to the accident by his own negligence.

That does not appear, unless being upon the track was itself such negligence, which has been shown not to be the law, when the track is laid along the public highway.

No one saw the deceased when he was killed ; no one testified as to how the killing occurred, except that deceased was killed by being run over by the locomotive of defendant. There is a total absence of any evidence to show what deceased was doing when he was struck—that he was either careful or negligent.

The presumption of the law is, that he was careful. That presumption the plaintiff must have the benefit of. The burden of showing contributory negligence was upon the defendant ; and it offered no evidence upon the subject.

Under such circumstances how could the jury have failed to find in favor of the plaintiff?

The case of Penn. R. R. Co. vs. Weber, 76 Penn. St., 157, *supra*, is squarely in point.

To summarise :

The evidence shows that defendant was negligent in conduct of its agents and equipment of its engine.

It shows no negligence on part of deceased, unless his being on the track was evidence of such negligence, overcoming the presumption of due care.

But he had a right to be on the track if laid along a highway, provided he used due care. That due care is presumed, and there was no evidence to overcome the presumption. The verdict therefore was properly given in favor of plaintiff.

Even if this court should find that deceased had no right on the railroad track and was a trespasser by being there, still, the verdict can be sustained, because it was the duty of the company to have some one on the lookout on the end of tender when it was dark and when there was no headlight or cowcatcher at the end, and the wood was so piled on the tender as to prevent the engineer from seeing what was on the track. Had such a lookout been kept the presence of deceased on the track would have been discovered in time to warn him or stop the engine before he was run down by it.

In other words, by the use of ordinary care defendant might have prevented the injury, and it was its duty to do it, notwithstanding deceased should be held to have been a trespasser on the track.

THE CHIEF-JUSTICE delivered the opinion of the court:

The appellee, Annie E. Yniestra, brought her suit in the above stated county to recover damages from the L. & N. R. R. Co. for the killing of her husband, Moses G. Yniestra, by an engine and tender operated by the employes of the defendant company. On the trial of the cause it appeared that Moses G. Yniestra on the morning of the 14th

day of February, A. D. 1884, was walking on the track of the Pensacola and Atlantic R. R. Co. There was another track running parallel, at the distance of eight feet, with the one on which Yniestra was found, belonging to the defendant. The two were used in common by the Louisville and Nashville Railroad Company and the Pensacola and Atlantic Railroad Company for the purpose of a switch yard, making up trains, &c. The time Yniestra was killed was about the break of day, when, according to the evidence, an object the size of a man could be distinguished fifty or sixty yards. The track was laid in a public street in the city of Pensacola. Yniestra had been in the habit of walking through said switch yard for about three years. The deceased was forty-seven years of age and a man quick in his movements. The walking between said tracks and on either side of them was good, better than on the track. Engines were switching over the yard continuously both day and night. Just before the killing of Yniestra, the engine which ran over him had gone up the P. & A. track to a switch connecting the tracks of said companies some 300 or 400 feet above where he was killed, and switched on to the L. & N. track.

The engine passed through the switch and backed down the Louisville track about 500 or 600 feet to a cattle pen, and returned to the switch. Mathena, one of the switchmen, just before the engine got to the switch, saw Yniestra walking down the Pensacola and Atlantic track. He was walking about as fast as a man usually walked. The engine was in six or eight feet of him. Directly afterward Mathena threw the switch, and the engine and tender passed on to the Pensacola and Atlantic track, the one on which Mathena had just seen Yniestra walking, and backed down the same some 300 or 400 feet, and ran over and killed him. The headlight of the engine was burning

brightly, the bell was ringing, and at the time of the kill-
ing the machinery was not working, the engine was merely
rolling, about as fast as a man usually walks.

There was no light nor cowcatcher on the rear of the
tender.   There was no lookout to warn people off the track
on the rear of the tender.   There were five men on the en-
gine—the engineer, yardmaster, fireman and two switch-
men.

The wood was piled so high on the tender that the per-
sons on the engine could not see down the track on which
they were backing.

There were no witnesses as to the killing except the em-
ployes of the defendant who did it, and there is no conflict
in their evidence.   There was a verdict and judgment for
plaintiff.

The appellant assigns as error the refusal of the court to
give instructions numbered 16, *b* and *c*, asked by appel-
lant's counsel.   These instructions are as follows:

16. "The facts in this case show contributory negligence
in the deceased, and do not show such negligence by the
defendant or its employes, after their discovery of the peril
of the deceased, as to authorize a verdict in favor of the
plaintiff, and you will find for the defendant."

*b.* " If you find from the evidence that the place at which
the death of Moses Yniestra occurred was used by the de-
fendant as a part of its switch yard, where the switch en-
gine and trains were constantly switching backward and
forward, and that Moses Yniestra knew this fact and that
he knew that at that time an engine was going backward
and forward in said switch yard near and on both sides of
the track on which he had placed himself, and might at
any minute back down on said track, and that at night, or
when it was dark, he walked along or crossed said track
at said point in said switch yard, that there was good

walking alongside of said track, and that he was killed by the engine on said track, the plaintiff cannot recover, unless she proves that the said Moses Yniestra was in the exercise of due care at the time of the accident, or that the employes on the train after they discovered that he was on the track were guilty of recklessness, wantoness, or willfulness that caused his death."

c. "If you find from the evidence that the place at which the death of Moses Yniestra occurred was used by the defendant as part of its switch yard, where the switch engine and trains were constantly going backward and forward, and that he knew this fact, and he knew that at that time an engine was going backward and forward in said switch yard near and on both sides of the track on which he placed himself, and might at any time come down on the said track, and that at night or when it was dark he walked along or crossed said track at said point in said switch yard, that there was a good walk alongside of said track, and that he was killed by the engine, the plaintiff cannot recover unless she proves that those persons in charge of the engine after they discovered that he was on the track were guilty of recklessness, wantoness or willfulness which caused his death."

The appellant also assigns as error the refusal of the court to grant a new trial

The motion for a new trial was based on the following grounds:

1. The verdict is contrary to law.
2. The verdict is contrary to the evidence.
3. The verdict is contrary to the charge of the court.
4. The verdict is unsupported by the evidence.

There were other grounds, also, which it is unnecessary to notice here. The evidence has already been set forth. The charge of the court was as follows: "The plaintiff

sues the defendant for damages resulting from the killing of her husband, which she alleges occurred through the negligence of the agents of the defendant. In order to sustain her claim she must show that her husband was killed by the defendant's agents, and she must show that the killing was by their negligence. The defendant admits that under the ruling of the court upon the question of the right of Moses Yniestra upon the railroad track, the defendant's agents in charge of the locomotive were guilty of negligence. The killing by the agents of the defendant is admitted, but the negligence of the defendant's agents must be proven. If you find such negligence you must find for the plaintiff, unless you find that the plea of defendant, setting up contributory negligence, be true. If Mr. Yniestra was himself negligent, and that negligence was the proximate cause of his death, the law calls that contributory negligence, and the plaintiff could not recover. As to whether the defendant was negligent, and whether the deceased was guilty of contributory negligence, that is a matter for you to determine under all the circumstances. If you find that the defendant's agents were negligent, and that Moses Yniestra was not negligent, then you will find for the plaintiff and assess her damages. In assessing her damages, you will give her compensation for the loss of her husband—the pecuniary loss. You cannot take into consideration the amount which would be required to support her and her children, but simply how much she has lost by his death in a money sense. In estimating this you must confine yourself to such a sum as paid now will furnish compensation for his loss. If you find, however, that there was no negligence on the part of the defendant or its its agents, or that his death happened from his own contributory negligence, you will find for the defendant. It is insisted by the defendant that the deceased was a tres-

passer on the track of the defendant, and even if the defendant or its agents were negligent, the plaintiff cannot recover. The law upon this point is that the streets of a city belong to the public, and that the public have a right to walk on the railroad track laid on the streets and are not trespassers in so doing, so that the mere fact that the deceased was walking on the track will not prevent a recovery by the plaintiff. If you find for the plaintiff, you will state in what sum you find for her. If you find for the defendant you will simply say: We, the jury, find for the defendant."

The court also, at the request of the defendant's counsel, gave to the jury special instructions designated in the bill of exceptions as 4, 5, 6, 10 and 11, as follows:

4. " In order that you may find for the plaintiff it will not be sufficient for you to find that the deceased met his death by being run over by the engine of the defendant. The defendant is not liable except for the negligence of itself or its employes, and such negligence must be proved by the evidence before you. The mere fact of killing raises no presumption of negligence of the defendant or its employes."

5. " The plaintiff cannot recover unless the deceased was in the exercise of reasonable care at the time of the accident, and if you find that he was not, you must find for the defendant in spite of any negligence which you may find the employes of the defendant in charge of the engine to have been guilty of, unless such negligence was after knowledge of the deceased's carelessness, and an opportunity to avoid the results of it."

6. " The presumption is that the deceased was not negligent, but if it appears from the evidence that the deceased was in a position of peril on the track at the time of the accident, and no explanation which is consistent with due

care on his part is given why he was there, the plaintiff fails and you must find for the defendant, unless it appears from the evidence that the accident happened from the negligence or want of ordinary care of the employes of the defendant after they discovered his position of peril."

10. "The employes of a railroad in charge of its train or engine have a right to presume that an adult person walking on the track is in possession of his faculties, and that he will get off to avoid the train."

11. "And the railroad company will not be responsible for an injury to him by the train or engine unless the employes in charge were negligent in not taking proper measures to avoid an injury to him after they had reasonable cause to apprehend that he would not get off."

All these assignments of error, appellant's counsel states, are only insisted on to show contributory negligence on the part of Yniestra.

The first error assigned is the refusal of the court to give the jury instruction numbered "16." A reference to this instruction will show that it required the court to assume and to charge the jury that certain facts were proven, the truth or falsity of which alleged facts it was the exclusive province of the jury to determine. Such a charge was properly refused. Section 1, chap. 1324, Laws of Florida, McClellan's Digest, 338, sec. 34, provides: "That upon the trial of all common law and criminal cases in the several Circuit Courts of the State, it shall be the duty of the judge presiding on such trial to charge the jury only upon the law of the case; that is, upon some point or points of law, or exceptions to evidence arising in the trial of said cause, and such charge shall be wholly in writing."

The next error assigned is the refusal of the court to give the jury the instruction, *supra*, 16 *b*.

We apprehend the correct rule to be (although there is

great conflict in the decisions of courts and in the opinions of commentators) as is insisted by counsel for appellee, that contributory negligence is a matter of defence to be plead and proved by the defendant, but with the qualification that if it appears from the plaintiff's own evidence in support of his cause of action that a presumption of contributory negligence by the deceased is fairly inferable from said evidence, the burden of proof is shifted and it becomes incumbent on the plaintiff to remove such presumption. B. & O. R. R. Co. vs. Whittacre, 35 Ohio St., 627 ; Robinson & Weaver vs. Gary, 28 Ohio St., 241. In Bancroft, Adm'r, vs. Boston & Worcester Railroad Corporation, the court say that under circumstances similar to those detailed in instruction 16-*b* that the plaintiff cannot recover "without adequate proof that he took active measures of precaution to guard against accident."

The instruction does not ask that plaintiff should be required to prove that at the time of the accident the deceased was in the exercise of due care, as an independent and unconnected proposition of law, but relatively to the supposed facts which precede it. Those facts, if proven, in our judgment were such as would warrant the presumption of want of due care and caution by the deceased in the protection of his person, and made it incumbent on the plaintiff, to remove such presumption.

We think the court erred in refusing to give the instruction.

The next errors assigned are the refusal to give to the jury the instruction designated 16-*c*, and the refusal of the court to grant a new trial.

We propose to consider this charge which the court refused, and those given by the court and designated in the bill of exceptions, as 4, 5, 6, 10 and 11, in connection with the evidence in the case with the view of determining

whether the deceased contributed by his want of proper care of himself to his death, and whether it was the duty of the court on the evidence to declare as matter of law that the deceased was guilty of negligence.

The action of the employes in running a locomotive and tender when it was dark along a public street without a light or cowcatcher on the rear of the tender, or a lookout thereon to warn persons off the track, and with wood piled so high on the tender as to prevent persons in the cab from seeing down the track on which they were going, was certainly negligent and deserves the utmost reprobation, and if we were permitted to look at this alone our duty of affirming the judgment of the Circuit Court would be plain, but the authorities establish beyond controversy, and on a foundation too solid to be weakened now by doubt or argument, the doctrine that a person who has been injured in person or property by the negligent act of another cannot recover damages for such negligent injury in a suit therefor if he has in any manner by his own wrong, negligence or want of ordinary or reasonable care contributed to such injury.

The injury must be " solely " caused by the negligence of the defendant. It is not enough that it should be " essentially " so caused. Grippen vs. The N. Y. Central R. R. Co., 40 N.Y., (1 Hand) 34; Central R. R. Co. of New Jersey vs. Teller *et al.*, 84 Penn. St. Repts., 226 ; Railroad Company vs. Jones, 95 U. S., 439 ; Havens vs. Erie R. R. Co., 41 N. Y., (2 Hand) 296; Pennsylvania Railroad Company vs. Beale, 73 Penn. St. R., 504 ; Wilds vs. Hudson River R. R. Co., 28 N. Y., (Smith, 10,) 430 ; Salter vs. Utica and Black River R. R. Co., 75 N. Y., (30 Sickles) 273 ; Penn. R. R. Co. vs. Bentley, 66 Penn. St. R., 30. " When negligence is the issue it must be an unmixed case." Dascombe vs. Buffalo & State Line R. R. Co., 27 Barbour, 221 ; Wil-

cox vs. R. W. & O. R. R. Co., 39 N. Y., (12 Tiffany) 358 ; Chicago, Rock Island & Pacific R. R. Co. vs. Bell, 70 Ill., 102; Telfer vs. Northern R. R. Co., 30 N. J., 188 ; Neal vs. Gillert, 23 Conn., 437.

The evidence to our mind shows conclusively that the deceased, by voluntarily walking on the track of the railroad when it was known to him that an engine was engaged in switching there night and day, when the walking was equally as good on either side of said track, needlessly assumed a dangerous risk, and directly contributed to his own misfortune. Ordinarily the question of contributory negligence is a question of fact for the jury under instructions from the court, but when there is no contradiction in the evidence and the facts are undisputed and the conclusions and inferences to be drawn from it are indisputable, involving a common instinct of mankind—self-preservation —it would seem clear that in such a case contributory negligence becomes a matter of law and it is the duty of the court to instruct the jury hypothetically that if they believe such evidence to be true that they establish a case of contributory negligence.

The great current and weight of authority certainly establishes this conclusion. Beach on Contributory Negligence, p. 454, §162 ; Rorer on Railroads, 1054 ; Baltimore & Potomac R. R. Co. vs. Jones, 95 U. S., 439.

But it is insisted that the fact that the track of the railway company being laid in a public street where the deceased had a right to walk relieves his act of being on the track at the time of the accident of the presumption of want of due care and precaution which would arise if he were a trespasser on the track. We are unable to perceive the force of this argument. It is not a question as to the exercise of a right but rather a question as to whether in the exercise of that right at the particular juncture when the

accident occurred he was using the necessary precautions for his safety that the law enjoined on him as an indispensable prerequisite to his recovery for the negligent act of the defendant. These questions are separate and distinct, and the question is narrowed down to the simple inquiry, "was the deceased in the exercise of ordinary care when he was tun over and killed."

In the scores of decided cases for damage to persons when a railway crosses a highway, the question of the right of the party injured to be on the track has never been considered a factor in determining whether the plaintiff was entitled to recover. The only questions in such cases have been of negligence on the part of defendant and contributory negligence on the part of the plaintiff.

In this case there was no necessity for the deceased to walk on and along the track of the railroad. The walking was as good on either side. In the case of crossings there is in addition to the right to cross the track a necessity for doing so when the person crossing has any occasion to go to the opposite side of the track from the one on which he may be. In this, then, the right to cross is less a subject of dispute, and a higher right because the person desiring to cross has no other means of accomplishing his purpose.

Yet in these cases where the right to cross is universally admitted, and the necessity of its exercise is apparent, the question as to the right of recovery for injury has been only one of negligence *vel non*. The cases here cited sustain this view as well as the position that the deceased was not in the exercise of ordinary care in being upon the track at the time of the accident.

In the case of Butterfield vs. Forerter, 11 East, 60, and which has ever since been regarded as a leading case, where a person was riding along a public street in Derby

at a very rapid speed and ran against an obstruction in the street left there by the carelessness of another, the court say " one person being in fault will not dispense with another using ordinary care of himself."

In the case of Stubley vs. London and N. W. Railway Company, Law Rep., 1 Ex. 13, Bramwell, B., said : " Passengers crossing the rails *are bound to exercise ordinary and reasonable care for their own safety,* and to look this way and that to see if danger is to be apprehended, and such ordinary care would be sufficient to prevent most accidents and would have prevented this."

In Grippen vs. N. Y. Central R. R. Co., 40 New York, (1 Hand) 34, the court say: " If the injured party, by looking up the track in the direction of the approaching train could have seen it in time to avoid the injury, his omission to do so was negligence, and the refusal of the court to so instruct the jury was error."

In 58 Maryland, Bacon vs. The Baltimore & Potomac R. R. Co., 482, the court say: " If the deceased did see or hear the approaching train in time and failed to get out of the way he was certainly guilty of the grossest negligence, and if he did not see or hear it, it must have been because he did not use his senses for his protection and he was therefore guilty of negligence, and that negligence directly contributed to his death." Central R. R. of New Jersey, 84 Penn. St. R. 226. " One who is approaching a railway crossing is not absolved from the duty of looking up and down the track to see whether a train is approaching by the omission to ring the bell or blow the whistle, and if failure to take such precaution contributes to any injury received by him by a collision with trains running on said railroad he cannot recover for such injury." Havens vs. Erie R. R. Co., 41 N. Y., (2 Hand,) 296.

" The approach by a public road crossing a railroad

was particularly dangerous because the railroad from na ural and other obstructions could not be seen or the whistle heard. The deceased in approaching the railroad did not stop to listen, and in crossing the road he was killed by the locomotive. Held that the deceased was guilty of negligence, and his family could not recover damages for his death." 73 Penn St., Beale vs. Penn. R. R. Co., 504.

" One driving in a highway across a railroad is guilty of· negligence fatal to an action if he does so without looking for a train, which he would have seen, or listening for signals of its approach which he would have heard in time to have avoided a collision." Wilds vs. Hudson R. R. Co. 24 N. Y., 430.

"It is the duty of a traveler upon a highway approaching a railroad crossing to exercise a proper degree of care and caution, and to make a vigilant use of his eyes and ears for the purpose ot ascertaining whether a train is approaching, and it by a proper use of his faculties he could have discovered the approach of a train and so have escaped injury, and failing to do so is injured, he is chargeable with contributory negligence, and cannot maintain an action." Salter vs. Utica & Black River R. R. Co., 75 N. Y., (30 Sickles,) 273.

" It is negligence in a traveler crossing a railroad not to stop and look up and down, because he is bound to presume that a train may be approaching." Penn. R. R. Co., vs. Bently, 66 Penn. St., 30.

" It should be regarded very little short of recklessness for any one to drive upon the track of a railroad without first looking and listening to ascertain whether a· moving locomotive is near." Dascombe vs. Buffalo & State Line R. R. Co., 27 Barbour, 221.

" When the deceased was killed in attempting to cross a

railroad track within the limits of the public highway, and at a public crossing, if it appear that the deceased would have seen the approaching cars in season to have avoided them had he first looked before attempting to cross, it will be presumed he did not look; and by omitting so plain and imperative a duty he will be deemed to have been guilty of negligence which precludes a recovery. A traveler in crossing a railroad track is required to exercise at least ordinary sense, prudence and capacity; which requires that he should use his ears and eyes, so far as he has an opportunity to do so, and a failure to do this will preclude a recovery in his favor in case of accident." Wilcox vs. R. W. & O. R. R. Co., 39 N. Y., (12 Tiffany) 358.

" In view of all the circumstances, the conclusion forces itself upon the mind that the deceased being fully advised of the approach of the train recklessly continued upon the crossing in front of the advancing train, or that if not so apprised, it was for the want of the simple precaution of looking and listening to find out whether a train was approaching, which would be a lack of common care and caution, and in either event the deceased's own want of ordinary care would have contributed directly to the injury which under the well settled doctrine, would preclude a recovery for any damage sustained." C. R. I. & P. R. R. Co. vs. Bell, 70 Ill., 102.

" The neglect of the engineer of a locomotive of a railroad train to sound its whistle or ring its bell on nearing a street crossing does not relieve a traveller on the street from the necessity of taking ordinary precaution for his safety. Before attempting to cross the railroad track, he is bound to use his senses—to listen and to look—in order to avoid any possible accident from an approaching train. If he omits to use them, and walks thoughtlessly upon the track, or if using them, he sees the train coming, and in-

stead of waiting for it to pass undertakes to cross the track, and in either case receives any injury, he so far contributes to it as to deprive him of any right to complain. If one chooses in such a position to take risks he must suffer the consequences. They cannot be visited on the railroad company." Railroad Company vs. Houston, 95 United States, 697.

In the case of the C. C. & C. R. R. Co., 8 Ohio St., 570, it was said by the court: " When the party injured is an adult of ordinary mental capacity, but partially deaf, her infirmity not being known to the employes of the company, will not increase their responsibilities as to care ; nor will it excuse her from the full measure of care, which prudent persons partially deaf, but conscious of their infirmity, would ordinarily observe under similar circumstances."

In Zimmermann vs. Hannibal & St. Joseph R. R, Co., 71 Missouri, 488, the plaintiff was injured while walking along the track of the railroad laid in a street of the city of Hannibal. The court say: "Here the plaintiff had lived for six years, within a few blocks of where he was injured, was on and over the railroad every day, knew that the passage of the train over the road at any hour was not an impossibility, could have seen the train from the bridge over Bear creek, and if he had not been deaf could have heard it, could have seen it when he walked on the track if he had looked in the direction from which it was approaching, was in his right mind, his visual organs were unimpaired, but he did not look in that direction, and there were but two directions in which he had to look to see an approaching train that could have injured him. He did not look or listen, but recklessly pursued his course upon the track of the railroad, between its rails, when there was ample space north of the track on which he could hav-

walked in safety, and yet it is urged that he was guilty of no negligence, but acted just as a prudent man would have acted under the circumstances. If, in such a case, a recovery can be had against a railroad company, the law might be declared in a very few words, that if any man crosses or walks along a railroad track and gets injured, he, or if he be killed, his representatives, may sue the company and recover damages; and all the difficulties and nice distinctions as to proximate and remote causes, and contributory, and non-contributory negligence which have so embarrassed the courts would immediately vanish."

In Harlan vs. R. R. Co., 64 Mo., the court say : " This court has, time and again, decided that it was the duty of every person about to cross a railroad track to approach cautiously, and endeavor to ascertain if there is present danger in crossing, as all persons are bound to know that such an undertaking is dangerous, and that they must take all proper precaution to avoid accident in so doing, otherwise they could not recover for injuries thereby received." See also, Lake Shore and Michigan R. R. Co. vs. Lovering, 25 Mich., 274 ; 53 Penn. St., 255 ; (Evans vs. P. F. & W. & C. R. R. Co.) 28 A. & E. R. R. cases, 59 ; Telfer vs. Northern R. R. Co., 30 N. J. L., 189.

In this case the court say that the blame attaches *prima facie* to the person obstructing the track.

The question which has divided the courts, as to whether the rights of the public are superior, equal or subordinate to the rights of the company operating such a railway, is one which, in our opinion, when the motive power, construction, ponderousness and manner of operating a train are considered, is of easy solution. The fact that a person has a right to go upon the railway track, does not justify him in attempting to exercise the right when, from passing trains, it is dangerous to do so, even though such

L. & N. Railroad Co. v. Annie E. Yniestra—Opinion of Court.

trains are being run negligently and without care, or even when, as some of the cases say, they were being run at a time which was prohibited by city ordinance. The law once permitting locomotives and trains to be run on a track located in thoroughfares, but one result can follow, and that is that they have practically, from their inherent incidents and characteristics, the superior right on their own track, whatever ingenious legal refining may be expended on the subject.

Unlike sentient beings, they have no choice of paths, but are restricted to one single course, already marked out and defined. They can turn neither to the right nor left, to one side or the other, nor can they be stopped when in motion from their frequently fatal track with the abrupt suddenness that any sentient being can exercise, and which is so often the only method of preventing a fatal catastrophe.

I feel constrained to say in conclusion that in my opinion, and speaking for myself individually, the operation of the principle of contributory negligence is unjust and inequitable. By the law, as it unquestionably stands, no matter how negligently or with what amount of care trains are run, if a person injured by one of them has failed to exercise care on his part, he cannot recover. As it happens in nearly every instance of colision, if not all, that the person on the track is alone injured or killed, the train receiving no damage, there is no present incentive of personal safety on the train hands to use caution, nor a fear of being compelled to make pecuniary compensation when they can rely upon being absolved from their admitted negligence by some careless act of the plaintiff. The law says you were both at fault, and draws from that premise the conclusion that one alone must bear all the damage, provided that one is the plaintiff. If that damage were in some instances in-

flicted on the train, and in some on the person on the track, and not as is almost invariably the case on the latter, the hardship would not be so apparent, and railroad companies would not have as they do now, a monopoly of the defence called contributory negligence.

Various reasons have been given by judges and commentators in justification of this, to my mind, narrow rule—that it is required by public policy, that the injury was of the plaintiff's own producing, and that the " law has no scales to determine in such cases whose wrong doing weighed most in the compound that occasioned the mischief." In another branch of jurisprudence these reasons have not been found potent, its " scales " seem better adjusted, and from the same premises of both plaintiff and defendant being in fault is drawn the more rational conclusion that the damages must be equally apportioned between them. This rule in admiralty courts has so commended itself that by act of Parliament, (36 and 37 Victoria) it is made the rule of the other courts in like case, where it used not to be. The law, in cases at least where human life is concerned, certainly needs legislative revision.

Judgment reversed and new trial granted.