Jacksonville Electric Co. v. Sloan—Syllabus.

| 52 | 257 |
|----|-----|
| 53 | 374 |
| f53 | 435 |
| 53 | 462 |
| 53 | 469 |
| e54 | 162 |
| f54 | 326 |
| 54 | 418 |
| 55 | 412 |
| 55 | 461 |
| 55 | 587 |
| 55 | 592 |

| '52 | 257 |
|----|-----|
| 56 | 368 |

| 52 | 257 |
|----|-----|
| 59 | 129 |
| f60 | 456 |

JACKSONVILLE ELECTRIC COMPANY, A CORPORATION DOING BUSINESS IN THE STATE OF FLORIDA, PLAINTIFF IN ERROR, v. LILLIAN G. SLOAN, DEFENDANT IN ERROR.

1. Where a witness gives an answer not responsive to a proper question propounded to him a motion to strike the answer is the proper method of reaching the answer.

2. An electrician of seventeen years' experience may properly be asked whether precautions were necessary in repairing broken electric wires.

3. Where a suit is brought by a widow to recover damages for the death of her husband under Sections 2342 and 2343 Revised Statutes of 1892, declarations or admissions of the deceased husband as to his physical condition on the morning before the afternoon when he was killed, and not a part of the res gestae, are inadmissible against the objection of the widow.

4. There is no absolute rule applicable to all cases by which to determine the question of the liability of the master to the servant where the servant is injured in the performance of a duty which he was ordered or requested by the master or his representative to perform, but the question of liability will depend on the circumstances of each case, and where the master or his representative orders or requests the servant to engage in an employment outside the scope of the duties which the servant has contracted to perform, which employment is attended with dangers unknown to the servant, and not open to his observation and which are not discoverable by him by means of such an inspection as he has time and opportunity to make, and the master gives him no instructions with respect to such dangers, and he is injured in consequence of so entering upon the new service, he is not deemed to have accepted the risk of

17—s. c.

such dangers, and the master is liable in damages for the injury.

5. When an emergency occurs in a master's business, whose serious nature calls a servant from his regular employment, and he is injured or killed while engaged in the effort to relieve the situation, in consequence of some defect or danger, imputable to the negligence of the master, the servant is not as a matter of law to be charged with contributory negligence, although but for the existence of such emergency he would be barred from recovering on the ground of being a volunteer, and of having accepted the risk.

6. In a suit for damages by a widow for the death of her husband under Sections 2342 and 2343 Revised Statutes of 1892, the burden of pleading and proving negligence on the part of the deceased husband is, under law, upon the defendant.

7. In determining the correctness of a particular charge, all the charges given should be considered and construed as a whole.

8. There is no error in refusing a peremptory charge for the defendant when there is evidence upon which the jury might find a verdict for the plaintiff.

9. There is no error in refusing instructions which were covered by other instructions which were given.

10. Instructions which ignore important features of the case are properly refused as misleading.

11. Instructions are properly refused which present questions outside of the issues made by the pleadings. Under Rule 71 of the Rules of the Circuit Court in Common Law Actions in actions for torts, the plea of not guilty operates as a denial of the breach of duty or wrongful act alleged to have been committed by the defendant and

not of the facts stated in the inducement, and no other defense than such denial is admissible under that plea; all other pleas in denial shall take issue on some particular matter of fact alleged in the declaration. Rule 72 provides that all matters in confession and avoidance shall be pleaded specially as in actions on contract.

12. It is not only the duty of the master to exercise ordinary care and diligence to provide a reasonable safe place in which the servant is to work, but to use ordinary care and diligence to keep it safe.

13. Electricity is an invisible force, highly dangerous to life and property, and those who make, sell, distribute and use it are bound to use care in proportion to the danger involved.

This case was decided by Division B.

Writ of error to the Circuit Court for Duval County.

The facts in the case are stated in the opinion of the court.

*Jno. E. Hartridge & Son,* for Plaintiff in Error;

*Alex. St. Clair-Abrams,* for Defendant in Error.

Hocker, J.: On the 22nd of September, 1903, the defendant in error Lillian G. Sloan, hereinafter called the plaintiff, sued the Jacksonville Electric Company, a corporation, in the Circuit Court of Duval county, Florida, for damages for the death of her husband, Henry J. Sloan, alleged to have been caused by the negligence of the Electric Company on the 11th of August, 1903, in Duval county. A trial was had in January, 1906, and on the 11th

day of that month a verdict was rendered in favor of the plaintiff for $14,000.00, and a judgment for that amount and costs was entered against the Electric Company on the same day. A writ of error was sued out from this judgment.

The declaration contained three counts and was as follows: "Lillian G. Sloan, by Alex. St. Clair-Abrams her attorney, sues the Jacksonville Electric Company, a corporation duly chartered and existing under the laws of the State of Florida, and having and usually keeping an office in Duval county, Florida, for the transaction of its customary business. For that whereas, the plaintiff, Lillian G. Sloan, is the widow of Henry J. Sloan and was on the 11th day of August, 1903, the lawful wife of the said Henry J. Sloan and was supported and maintained by the labor of the said Henry J. Sloan, who as her husband was her sole and only support, and the plaintiff was then and had been ever since her marriage supported and maintained by the said Henry J. Sloan, and whereas, on the 11th day of August, 1903, the said Henry J. Sloan, being then and there employed by the defendant, the Jacksonville Electric Company, to do certain work on certain pipes on the premises of said defendant, in the said city of Jacksonville, proceeded there to do and perform said work, and it was the duty of the defendant to provide for the said Henry J. Sloan a reasonably safe place in which to work. And the plaintiff further says that the said Henry J. Sloan, being then and there in and at the place where he was required to work, the defendant, failing and neglecting to keep said place of work in a reasonably safe condition, negligently and carelessly caused the electric power in said premises and which was under the control and operation of the defendant, to be suddenly

turned on, whereby and by reason of the sudden turning on of said electric power, the deceased received an electric shock, from the effects of which electric shock, the said Henry J. Sloan died. And the plaintiff says that by reason of the negligence of the defendant corporation in turning on said electric power, her said husband was killed, and she was and is deprived of the protection and support of her said husband, and the care and maintenance of herself and of her infant child by her said husband, have been cast upon her to the great damage and loss of the plaintiff in the sum of $25,000. Wherefore, the plaintiff brings this her suit and claims $25,000.00 damages.

## SECOND COUNT.

For that whereas, the plaintiff Lillian G. Sloan is the widow of Henry J. Sloan and was on the 11th day of August, 1903, the lawful wife of the said Henry J. Sloan and was supported and maintained by the labor of the said Henry J. Sloan, who as her husband was her sole and only support and the plaintiff was then and ever since her marriage supported and maintained by the said Henry J. Sloan, and whereas on the said 11th day of August, 1903, the said Henry J. Sloan was employed by the Jacksonville Electric Company to do certain work on certain pipes in a pit or cellar on the premises of said defendant, and entered into said pit or cellar to do and perform said work and it was the duty of the defendant to provide for the said Henry J. Sloan a reasonably safe place in which to work. And the plaintiff further says that the said Henry J. Sloan, being then and there at a place where he was required to work, that in and about said pit or cellar were cretain electric wires pertaining

to the premises and business of said defendant, and the plaintiff says it was the duty of the said defendant to keep and maintain said wires so protected and guarded that the electric power passing through them should not endanger the lives of the persons employed to work on said premises in said pit or cellar. And the plaintiff further says that the defendant knew, or could with reasonable care and diligence have known that if, of said wires should be broken or should come in contact with any person working in said pit or cellar while charged with electricity it would cause death or great bodily injury. And the plaintiff further says that the defendant carelessly and negligently permitted a loose electric wire to become and remain charged with electricity, and said wire coming in contact with the person of the said Henry J. Sloan inflicted upon him an electric shock, from the effects of which electric shock the said Henry J. Sloan died. And the said plaintiff says that by reason of the negligence of the defendant corporation in turning on said electric power her said husband was killed and she was and is deprived of the protection and support of her said husband, and the care and maintenance of herself, and of her infant child by her said husband, have been cast upon her to the great damage and loss of the plaintiff in the sum of $25,000. Wherefore the plaintiff brings this her bill and claims $25,000 damages.

### THIRD COUNT.

For that whereas the plaintiff, Lillian G. Sloan, is the widow of Henry J. Sloan and was on the 11th day of August, 1903, the lawful wife of the said Henry J. Sloan and was supported and maintained by the labor of the said Henry J. Sloan, who as her husband was her sole and

only support, and the plaintiff was then and has been ever since her marriage supported and maintained by the said Henry J. Sloan; and whereas on the 11th day of August, 1903, the said Henry J. Sloan, being then and there employed by the defendant, the Jacksonville Electric Company to do certain work on certain pipes on a certain pit or cellar on the premises of said defendant in the city of Jacksonville, proceeded there and entered said pit or cellar to do and perform said work, and it was the duty of the defendant to provide for the said Henry J. Sloan a reasonably safe place in which to work. And the plaintiff further says that the said Henry J. Sloan being then and there in and at the place where he was required to work, and there being in and about said pit or cellar certain electric wires, one of them became in such condition that it had to be repaired and it became and was necessary before such repairs could be made to turn off the electric power from the wire so needing repairs. And the plaintiff says that the said power was temporarily turned off. And the plaintiff says that the defendant knew, or could with reasonable care and diligence have known, that if the electric power was turned on that said wire would become charged with electricity and would become a source of danger to the lives and persons of those engaged in working in said pit or cellar and that it was the duty of the defendant to have kept said electric power from being turned on and through said wire until the work of repairing the same had been completed; but the plaintiff says that the defendant negligently and carelessly, regardless of its duty in this regard and without notice to the said Henry J. Sloan or any person in said pit or cellar suddenly turned, or caused to be turned, the electric power on and through said wire and said wire

coming in contact with the person of the said Henry J. Sloan inflicted upon him an electric shock, from the effect of which electric shock the said Henry J. Sloan died. And the plaintiff says that by reason of the negligence of the defendant corporation in turning on said electric power, her said husband was killed and she was and is deprived of the protection and support of her said husband, and the care and maintenance of herself and of her infant child by her said husband have been cast upon her to the great damage and loss of the plaintiff in the sum of $25,000. Wherefore the plaintiff brings this her suit and claims $$25,000 damages."

The defendant filed two pleas: First, not guilty; and, second, "that the injuries complained of were caused solely by the negligence of Henry J. Sloan, decedent, and not otherwise." There was a demurrer to the second plea, which was sustained by the court, and the defendant was granted leave to file "such additional plea as it may be advised," but no other plea was filed, and the case was tried on the plea of not guilty.

After the evidence was closed and the arguments concluded, the defendant moved the court to instruct the jury to find a verdict for the defendant, which was refused, and an exception noted to the ruling.

The following charge to the jury was given by the trial judge of his own motion: "Gentlemen of the jury, that is a suit for damages brought by the widow for the death of her husband, claimed to have brought about by the negligence of the defendant. In the first place, gentlemen, the rule of evidence in this class of cases is that the plaintiff, in order to recover, must sustain the case made by a preponderance of the evidence. Again, if you should find for the plaintiff in the case, she would be entitled to what is

known as compensatory damages; that is, such an amount as would compensate her for the loss of her husband, taking into account the amount she received from her husband during his life time, would probably receive during his probable life, which if fixed by certain tables, and also, such amount as you in your judgment believe will compensate her for the loss of the association, care and protection of the husband during the probable life of her husband, if her life probability is greater than that of the husband. Of course, when the life probability of the wife is less than that of the husband, it would be during her life probability; but there is testimony in this case as to one probability only, or two probabilities, and both of those give the probability of the life of the wife greater than that of the husband. So you will be guided by the life probability of the husband. You, gentlemen, are the sole judges of the testimony, the credibility of the witnesses and the weight to be attached to the testimony of any witness or set of witnesses. It is your province, your sole province to pass upon the disputed issues of fact, and in doing this, gentlemen, you should, if you can, reconcile all the testimony of all the witnesses, so as to make them all speak the truth. If you cannot do this, and you find a conflict as to material matters between the witnesses, then it becomes your duty, under your oaths as jurors to decide which witness or set of witnesses have testified truthfully, and form your verdict on the testimony you believe to be true. In weighing the testimony of the witnesses, you should, gentlemen, take into consideration the position of the witness at the time of the giving of his testimony, and at the time of the happening of the event testified about, the bias or prejudice, if any, of the witness as may be exhibited on the stand before you; the manner

of the witness in the giving of his testimony, as to whether he is a reluctant or a forward witness; the intelligence of the witness, or the contrary, in order that you may judge of his observations and the correctness of them, and whether or not he can intelligently detail what he has observed; his interest in the result of his testimony, if any; the reasonableness, or otherwise, of his testimony, as judged by your common every-day experience; the contradictions in the testimony of the witness himself or the testimony of other witnesses whom you believe to have testified truthfully. And, in fact, gentlemen, all the circumstances surrounding the witness bearing upon his credibility are proper for your consideration in arriving at what weight you will attach to his testimony. Of course, gentlemen, you must do this carefully, fairly and impartially under your oaths as jurors, with the purpose in view, as nearly as you can, of reaching the facts of the particular case on trial before you. Now the right, gentlemen, of this plaintiff to recover is based upon the negligence of the defendant, or its agents or servants, which negligence caused the injury complained of. 'Negligence,' gentlemen, has been defined as the leaving undone of something that a reasonably prudent person under similar circumstances would do, or the doing of something which a reasonably prudent person would not do. That is negligence. It is a question of fact for you to find from the testimony. Now if you find for the plaintiff, the form of your verdict is: 'We, the jury, find the defendant guilty and assess the damages' ———— at what you find would be proper compensation under the rules that I have given you. If you find for the defendant, the form of your verdict is: 'We the jury find the defendant not guilty.' If you find for the plaintiff, you find the defendant guilty,

Jacksonville Electric Co. v. Sloan—Opinion of Court.

and assess the damages; if you find for the defendant, the form of you verdict is not guilty."

At the request of the defendant the court gave the following instructions: "The burden of proof is upon the plaintiff to establish by preponderance of evidence the facts necessary to a verdict in her favor, under the instructions as given you in this case.

2. The court instructs the jury that if they believe from the evidence that the engineer, assistant engineer, fireman, lineman and steam fitter in the electric power works of the defendant were all employed by and working under the same general manager and deriving their authority and compensation from the same source and were engaged in the same general business of operating an electric power house and lighting plant, then, as to each other, they were, in law, what is known as fellow servants.

4. The court instructs the jury that a servant entering into a dangerous employment assumes such risks as are ordinarily incident to the employment from causes open and obvious to the employe, the dangerous character of which he had opportunity to ascertain, and he must exercise reasonable care and caution for his own safety while engaged in the employer's service. So, if you believe from the evidence that the danger of receiving a shock while splicing a broken electric wire was open and obvious to Henry Sloan, or a danger, the character of which he had the opportunity of ascertaining, and he failed to exercise reasonable care and caution for his safety while engaged in the work, and by reason thereof received a shock from which death ensued, then the plaintiff cannot recover in this cause and your verdict should be for the defendant.

12. If you believe from the evidence in this case that

Henry Sloan, the plaintiff's decedent, died from heat exhaustion or any disease superinduced by physical weakness, extreme heat and excitement or any other natural cause, then the plaintiff canot recover in this case, and your verdict should be for the defendant.

13. In all departments of life where labor is employed and the relationship of master and servant or of fellow servants or coemployes exists, it is the right of each to treat the other as normal as to health and condition until the contrary is made to appear, and in the case of master and servant, until the contrary is brought to the attention of the master. So, if you believe from the evidence in this case that the current, at the power house, passing through the wire that Sloan is alleged to have come in contact with, was a direct current as distinguished from an alternating current and that the entire voltage of the current of which the plant was capable, and which was possible to be transmitted through said wire, by the equipment of the plant, could be taken by an ordinary normal person without causing serious injury, and that through the negligence of another employee the current was turned on and Sloan received the same, and that owing to his being a physically weak man, or other physical defect, it caused his death, and but for such weakness or physical defect the shock would not have killed him and that his condition of weakness or physical defect was unknown to the master, then the plaintiff cannot recover in this case, even though the death was caused by the electric current so turned on, and your verdict under such a condition should be for the defendant.

14. One of the defenses set up by the defendant in this case is that Henry Sloan was not killed by an electric

shock, but that he died from a natural cause, and it being a question of dispute as to the cause of death no presumption of negligence arises against the defendant on the mere proof of his death. It is to be decided like any other question arising in a civil suit; so before you can reach a conclusion under the law, that Henry Sloan was killed by an electric shock or any electric current, such fact must be established by the plaintiff by a preponderance of evidence. So unless you find that it is established by a preponderance of the testimony that Henry Sloan was killed by an electric shock, your verdict should be for the defendant, and if, on the contrary you find from a preponderance of evidence that the death of Henry Sloan was caused by an electric shock, then the question will arise, for your investigation, as to whether the electric shock was caused by the negligence of an employe of the defendant, and if you so find, then you should further investigate as to whether Henry Sloan by any act of commission or omission contributed to bring about the act, as, under the law one fellow servant cannot recover damages from the master for the act of another fellow servant, unless he himself is free from blame, and if you find from the evidence that Henry Sloan, by his negligence, contributed to bringing about the accident, then he could not have recovered if he had lived, and his widow cannot recover under such circumstances, as his survivor claiming a right of action and your verdict should be for the defendant.

15. Before you can find a verdict for the plaintiff in this case, you must find from a preponderance of the evidence that Henry Sloan came to his death solely from an electric current transmitted by a wire of the defendant and from no other cause, and that the current had been turned on by the negligence of a co-

employe, and that Sloan himself was absolutely free from negligence; that is to say, did not in any way contribute by his own negligence to bringing about the accident. For if you find from the evidence either than Henry Sloan died from heat exhaustion or from any natural cause, the plaintiff cannot recover, or if you find that he did not die from a natural cause, but died from an electric shock and further find that he in any way contributed by his own carelessness, negligence or act to his receiving the electric shock that caused his death, then the plaintiff cannot recover and your verdict should be for the defendant.

16. No recovery can be had for the death of any one caused by the wrongful act, negligence, carelessness or default of another, unless the wrongful act, negligence, carelessness or default from which the death ensued was such as would have entitled the deceased person to a recovery of damages had death not ensued. If, for any reason, the deceased person would have been defeated or barred from recovery had he been alive and suing for personal injuries only, then the same reason or cause for his bar or defeat will bar and defeat a recovery for his death by anyone suing on that behalf.

17. Under the provisions of the statute under which this suit is brought the plaintiff, Mrs. Sloan, cannot recover damages from the Jacksonville Electric Company for the death of Henry Sloan on account of the negligence or carelessness of another employe, unless Henry Sloan was wholly without fault himself, even though in performing the act that resulted in his death he was acting under the orders of a superior. So if you find from the evidence in this case that there was negligence upon the part of a co-employe in turning on the current and that that negligence was the cause of the death of Henry Sloan, still his widow

could not recover from the defendant, if you further find from the evidence that Henry Sloan was not wholly without fault himself. In other words, if Henry Sloan, by his negligence, contributed to the bringing about of the accident, and you so find from the evidence, that caused his death, the plaintiff, the widow, cannot recover in this case and your verdict under which conditions should be for the defendant.

18. If you find under the above instructions that Henry Sloan and the defendant were both guilty of negligence which contributed to bringing about the accident to Henry Sloan, then the plaintiff cannot recover herein and you will find for the defendant. If you find that neither Henry Sloan nor the defendant was guilty of such negligence, then you will also find for the defendant.

19. The court instructs the jury that it is not enough to say or find that there is some evidence of negligence on defendant's part. A scintilla of evidence or a mere surmise that there may have been negligence on the part of the defendant, will not warrant the jury in finding a verdict for the plaintiff. There must be evidence upon which the jury can reasonably conclude that there was negligence."

At the request of the plaintiff the following instructions were given, viz.:

"1st. In a case of this kind circumstantial evidence is admissible to prove or to disprove any of the facts in issue, and it is the duty of the jury to take into consideration the circumstances admitted in evidence which have a proper bearing on the case.

2nd. It is the duty of an employer to provide a reasonably safe place for employes to work in. In case of an electric company which uses wires charged with elec-

tricity of such voltage as to be dangerous to human life or to be capable of inflicting great bodily harm, it is the duty of such company to see that the wires are kept reasonably safe from injuring any person employed in working on and about them.

3rd. A company maintaining electric wires over which a high voltage of electricity is conveyed rendering them highly dangerous, is under the duty of using the necessary care and prudence at places where others may have a right to go, to prevent injury.

5th. Corporations act and perform their duties through the agency of their servants and employes. Where it is a duty of a corporation to perform an act, and the authority to do that act is imposed upon one of its employes, such employe stands in the place of and as a representative of the corporation and the corporation is responsible for the negligence of the officer or agent charged with the performance of such duty.

6th. If the jury believe from the preponderance of the evidence that on the day of the death of Henry J. Sloan, he was employed by the defendant Jacksonville Electric Company, and that he was at work for said company at the request of another employe who was in charge of the work of repairing a broken electric wire, in the place in which it is alleged that he received the electric shock from which it is further charged he died, then I charge you that he was not a trespasser on the premises of the defendant, nor a mere licensee, but that he was lawfully where he was and in the employ of the defendant.

8th. If you believe from the preponderance of the evidence that on the day Henry J. Sloan died he was em-

ployed by the defendant and was in the service of the defendant, engaged in repairing or doing work on certain pipes in a pit or place where there are electric wires, usually charged with electricity of a high voltage; and if you further believe from the preponderance of the evidence that shortly before his death, another employe of the defendant came to him into the pit or place, and requested him, the deceased, to help him in repairing a broken wire, and if you further believe from the preponderance of the evidence that this employe had authority in the premises, then I charge you that if the deceased consented to aid him in said work, the deceased was for the time being a servant of the defendant, while engaged in assisting in the work, and was entitled to the same protection as the other employes and servants.

10th. A person killed by an electric shock or from any other cause resulting from the negligence of another is presumed in law to have been in the exercise of reasonable care for himself, unless it is shown by a preponderance of evidence that he knew of the danger and carelessly and negligently risked his life or person by some act of omission or commission on his part.

12th. If you believe from the preponderance of the evidence that on the 11th day of August, A. D.. 1903, Henry J. Sloan was in the employ of the Jacksonville Electric Company, and was on the premises of said company in a pit or place where pipes were, engaged in working for said company on said pipes, and if you further believe from the preponderance of the evidence, that in the place where he was working were a number of electric wires used by the company in its business; and if you further

18—S. C.

believe from the preponderance of the evidence that
while the deceased was there engaged in his work another
employee of the company came to the place where the de-
ceased was, and requested the deceasd to aid him in
repairing a wire, and if you further believe from the pre-
ponderance of the evidence that the deceased consented to
aid him in repairing the wire, and that the deceased and
another employe went to work thereon; and if you further
believe from the preponderance of the evidence, whether
direct or circumstantial, that the deceased held and
worked on one end of the wire, holding the same in his
hands for some minutes before his death without injury
to himself, and that suddenly there was a flash, and the
deceased fell, and a few minutes thereafter died, and if
you further believe from the preponderance of the evidence
that shortly before this the cars propelled by the electric-
ity of the defendant had stopped running, and at the
expiration of some minutes the electric current was turned
on the wires again; and if you further believe from the
preponderance of the evidence that the wires in the pit or
place where the deceased was engaged were connected
with the wires which propelled the electric cars of the
defendant, and if you further believe from the preponder-
ance of evidence, whether direct or circumstantial, that
while the deceased was holding the electric wire in his
hands the electric current was suddenly turned through
the wires, and that no notice or warning was given to the
dceased, and if you further believe from the preponderance
of the evidence that deceased met his death from an elec-
tric shock, and that the deceased was without fault on his
part, then I charge you that the defendant is liable, and
that it is your duty to find the defendant guilty and to as-

sess such damages for the plaintiff as in your judgment she is entitled to.

13th. If you further believe from the preponderance of the evidence that the deceased came to his death from an electric shock from a wire charged with electricity on the premises of the defendant, and if you further believe from the preponderance of the evidence that the deceased was lawfully on the premises of the defendant and at work for defendant, and if you further believe from the preponderance of the evidence that the defendant was negligent in permitting the electric current to pass through the wire while the deceased was engaged in repairing the wire, and that the deceased was without negligence or fault on his part, then I charge you it is your duty to find the defendant guilty, and assess the damages in favor of the plaintiff at such sum as in your judgment, based upon the evidence and the rule of law, as laid down by the court, you may consider the plaintiff entitled to, not exceeding, however, the sum charged in the declaration.

14th. In a case of this kind you have a right to take into consideration in estimating the pecuniary loss of the plaintiff, if you believe she is entitled to damages, her loss of the comfort, protection and society of her husband in the light of all the evidence in the case relating to the character, habits and conduct of the deceased, as her husband, and to the marital relations between the parties at the time of and prior to his death. She is also entitled to recover reasonable compensation for the loss of support which her husband was legally bound to give her, based upon his then and probable future earnings and acquisitions to be estimated upon the basis of his health, age, business capacity, habits, experience and

knowledge. All these elements to be based upon the probable joint lives of the plaintiff and her deceased husband, the sum total to be reduced to a money value, and its present worth given as damages. Within these limits you have a right to exercise a reasonable discretion as to the amount to be awarded based upon the facts in evidence.

15th. If you believe from the preponderance of the evidence that the deceased at the time of his death was thirty-eight years of age and was in good health, and had a life expectancy of twenty-nine years, and that of his earnings his wife received from him for her own support and use an average of $16.00 per week, or $832.00 per annum, then the first element of damages it is your duty to consider is what sum capitalized should be awarded to her, which would give her the sum of $832 per annum and exhaust the entire amount awarded at the end of twenty-eight or twenty-nine years of the life expectancy of the deceased. This amount you have a right to find from the evidence, if evidence has been given you, fairly approximating the sum to which she would be entitled, based upon his life expectancy and the sum he contributed to her support. In addition to this sum you have a right to consider what compensation she is entitled to for the loss of the society, protection and comfort of her husband as I have already charged you. The sum to be awarded to the plaintiff, if you decide she is entitled to damages for the loss of the society, protection and comfort of her said husband, must necessarily be largely within your discretion, within the limits I charge you on. And in considering this question you have a right to consider whether or not he was a kind, affectionate husband, attentive to his wife, and the marital relations between them, in accordance with the evidence given on these subjects.

18th. You are the sole judges of the weight of the testimony and the credibility of the witnesses. You have a right to consider the interest of any witness in his or her relation to either the plaintiff or defendant and to reject all testimony that you believe untrue or unreasonable."

The first, second, sixth and seventh assignments of error are not before us for consideration.

The third assignment of error is: "The court erred in the admission of the testimony of M. E. Fretwell to prove that 500 voltage of direct current in case of a grounded circuit would be fatal.

M. E. Fretwell, a witness for the plaintiff, was an electrician of seventeen years experience employed by the City Electric Light Department of Jacksonville, and there was evidence tending to show that a direct current of 500 voltage of electricity had passed through Sloan while wet with perspiration standing on the damp ground holding the wire in his hands. The record on page 193 shows that the plaintiff's attorney propounded the following question: "Would your study warrant you in stating whether or not a direct current of 500 voltage, suddenly turned upon a wire held in both hands by a person standing on the damp ground, wet with perspiration—what effect that would have upon it?"

Mr. Hartridge, for the defendant, objected to this question on the ground that there is no evidence here to show what the voltage was in the wire, or that M. E. Fretwell had ever made a study of electricity. The court permitted the witness to answer the question, to which ruling an exception was noted for the defendant. The witness answered: "In the case of a grounded circuit, I would consider that fatal." There was further explanation made, and no motion made to strike the answer. The sole

contention here is that the answer took into consideration a ground circuit which was wholly outside of the case. There is no contention that the question called for such an answer. He was asked if his study would warrant his answering the question. We are not shown in what respect the question was objectionable, and in the light of the whole testimony it seems to us to have been proper. No error is properly presented by this assignment.

The fourth assignment of error is: "The court erred in the admission of the testimony of M. E. Fretwell to prove that he took all precautions possible in repairing broken wires." This question was objected to on the ground that what the witness would do or what precautions he would take could not be considered; that it was a question of what was done at the time of the accident, whether that was proper or not. The judge overruled the objections and an objection to the ruling was noted. The witness answered: "I always take all precautions possible." Electricity is recognized as a dangerous agency whose characteristics are not matters of common knowledge. Mr. Fretwell was by occupation an electrician, having seventeen years' experience, and could properly be expected to have a special knowledge of those matters. It seems to us the question, under the circumstances of this case, was proper, and especially as the examination of this witness is given in two places in the same bill of exceptions, and in one of those places it appears that the question objected to was changed by the court itself so as to ask the witness whether precautions were necessary. The witness answered, "I consider them so." There was no objection to this question, or to the answer.

The fifth assignment is: "That the court erred in re-

fusing to admit the testimony of W. H. Tucker on the part of the defendant to show the physical condition of Henry J. Sloan, from his own statement, and that he had complained of the heat and his weak physical condition on the morning of the day of his death." Mr. Tucker was the manager of the defendant company at the time of Sloan's death; knew him well, and testified that he had several conversations with him during the morning preceding the afternoon when he died. He was then asked the question involved in this assignment. In neither of the voluminous briefs filed in this case by the respective parties, citing two hundred and fifty authorities, are we referred to one showing the assignment to be either valid or invalid. So far as we are advised the question whether the declarations or admissions of the deceased in a suit like the present one, brought by the wife for her own benefit under our statutes (Secs. 2342 and 2343, Revised Statutes of 1892) are admissible in evidence, and if so under what circumstances and to what extent, has never been decided by this court. We are inclined to think from such an examination of the authorities as we have been able to make that such declarations or admissions are inadmissible in an action brought by the widow of the deceased, and are to be regarded as other hearsay evidence, unless they are made under such circumstances as to be a part of the *res gestae*. Death by Wrongful Act (Tiffany) Sec. 194; Bradford City v. Downs, 126 Pa. St., 622, 17 Atl. Rep. 884; Camden & A. R. Co. v. Williams, 61 N. J. L. 646, 40 Atl. Rep. 634; Pennsylvania Company v. Long, 94 Ind. 250. It is suggested, without decision, that possibly a different rule would apply where the action was brought by the executor or administrator of the deceased

for the benefit of his estate, 2 Wigmore on Ev., Sec. 1081 (1).

The eighth assignment of error questions the correctness of the instruction numbered 8 given by the trial judge on behalf of the plaintiff. The objection urged against this instruction is that it gave the jury to understand that a volunteer for a hazardous service does not assume the element of risk involved in the work undertaken. The principal authority cited to maintain this contention is 4 Thompson's Commentaries on the Law of Negligence, Secs. 4678-4679. It will be seen by an examination of the whole article devoted by Thompson to a discussion of the subject of "Risks of Danger outside of the Scope of Employment," that there is no absolute rule applicable to all cases by which to determine the question of the liability of the master to the servant where the servant is injured in consequence of being ordered by the master or his representative to perform a duty which he had not undertaken by the contract of service, but that the question will depend upon the circumstances of each particular case. Id. Sec. 475. In Section 4676 the author says: "There is a general concurrence of authority in support of the conclusion that where the master orders the servant into an employment outside the scope of the duties which the servant has contracted to perform, which employment is attended with dangers unknown to the servant and not open to his observation, and which are not discoverable by him by means of such an inspection as he has time and opportunity to make, and gives him no instructions with respect to such dangers, and he is injured in consequence of so entering upon the new service, he is not deemed to have accepted the risk of such dangers, but he may recover damages from the master for the injury." To bring

himself within this rule the servant must be acting upon orders or at the request of the master or of some other employe who has authority to give the order or to make the request. Sec. 4677. Again the author says in Section 4682: "Emergencies frequently arise where the servant quitting his regular employment is not imputable with contributory negligence, nor barred from recovering damages from his master, as matter of law, provided that while so acting he is injured in consequence of some defect or danger imputable to the negligence of the master, although but for the existence of such emergency, he would be barred from recovering on the ground of being a volunteer and of having accepted the risk." Several cases are referred to by the author where this principle was applied. In the instant case there was upon the part of the plaintiff evidence tending to prove, among other things, that her husband Henry J. Sloan was employed by the defendant and worked for it as a pipe fitter in its power house in Jacksonville on and some months before the 11th of August, 1903. On that day he was working in the basement underneath the floor where the machinery was located. A wire over which the electricity was transmitted that operated the defendant's trolley cars ran through this basement. In the afternoon of that day it broke or was burned in two and the trolley cars stopped running. The line foreman of the defendant company, L. T. Smith, whose duties were to repair the lines and "most anything that came up," requested Henry J. Sloan to assist in mending or splicing the wire which was then a dead wire; that Sloan did assist, and while holding in his hands the ends of the broken wire upon which the line foreman was working, a five hundred voltage current of electricity was suddenly and without notice to Sloan turned on the wire

and passed through Sloan, causing his death. From this standpoint we do not think that Sloan could be regarded as a mere volunteer, and we do not consider the instruction obnoxious to the objections made. Johnson v. Ashland Water Company, 71 Wis. 553, 37 N. W. Rep. 823.

The ninth assignment is based on the tenth instruction given on behalf of the plaintiff. It is insisted that this instruction is misleading and does not state the law correctly. No authority is cited to sustain this contention. In this State in a suit like the instant one, the burden of pleading and proving negligence on the part of the plaintiff is upon the defendant. Louisville & Nashville Railroad Co., v. Yniestra, 21 Fla. 700; City of Orlando v. Heard, 29 Fla. 581, 11 South. Rep. 182; Morris v. Florida Cent. & P. R. Co., 43 Fla. 10, 29 South. Rep. 541. The law as stated in the instruction is supported by the following authorities: Flynn v. Kansas City, St. Joseph & Council Bluffs R. R. Co., 78 Mo. 195; Reading and Columbia R. R. Co., v. Richie, 102 Pa. St. 425; Parsons v. Missouri Pac. Ry. Co., 94 Mo. 286, 6 S. W. Rep. 464.

Assignment No. 10 is based on the giving of instruction No. 12 for the plaintiff. The objection to this instruction is that it conveyed to the minds of the jury, the judge's opinion as to what inferences of fact should be drawn from any particular fact; that it is argumentative and that there was no evidence to show that Sloan was solicited to participate in the work of mending a broken wire.

William Carter, a witness for the plaintiff, testified that he was working with Sloan on the 11th of August, 1903, in the basement of the power house, and heard Smith, the line foreman, tell Sloan he wanted him to help him connect a wire, and that he then saw Smith and Sloan working with the wire trimming it; that Sloan was hold-

ing the wire and that a flash from the wires came and Sloan fell. The evidence clearly shows that Sloan fell unconscious and died in a few moments thereafter. It was not contended that any other fact was hypothesized in this charge of which there was no evidence. We discover no error in the instruction. Kelly v. State, 44 Fla. 441, 33 South. Rep. 235.

Assignment No. 11 is based on instruction No. 13 given at plaintiff's request. The contention is that there is no evidence that Henry J. Sloan died from an electric shock; that the evidence shows that he was a mere volunteer; that any work he did on the wire was without request, and voluntary, and that there was no evidence that he was free from fault. As to the last contention there is no plea setting up the negligence of Sloan, therefore such negligence, if any, was not in issue, and the charge in this respect was more favorable to the defendant than it had a right to ask, and consequently of this feature the defendant cannot complain. As to the contention that there is not a syllable of testimony which shows or tends to show that Henry J. Sloan died from an electric shock, we are of opinion that it is untenable. There was evidence tending to show that Sloan on the 11th of August, 1903, was in the employment of the defendant as a pipe fitter; that he was in fairly good health; that he worked all the morning in the basement of defendant's power house; that he quit work at noon and returned after dinner; that he was apparently in good health; that the basement was a very warm, damp place having a temperature of 120 degrees, but it does not appear that Sloan or any one had ever been overcome by heat of the place; that Sloan was requested by Smith, the line foreman having charge of the repairing of the wires of the company, to assist him in repairing the broken

wire, which was then a dead wire, and which transmitted electricity from the generator to the trolley lines; that he did assist Smith, and while holding the ends of the broken wire the electric current of about 500 voltage was suddenly and without notice to Sloan turned on the wire; that there was a flash of fire and Sloan fell unconscious and died in a few moments; that the place was damp and Sloan was standing on the damp ground; that under such circumstances the current would pass through the body of Sloan; that such a voltage of electrictity under such circumstances is sometimes fatal. If the jury believed this evidence, and it was for them to say whether they believed it or not, they might well find that Sloan died from the electric shock, and that he was not a mere volunteer to whom the company owed no duty except that of humanity. The fact that the testimony of the defendant contradicted that of the plaintiff does not make the instruction improper.

Assignment No. 13 is based on instruction No. 15 given at plaintiff's request. The contention is that this instruction does not require as a condition precedent that the plaintiff should be entitled to recover before fixing the amount of recovery, in other words that it assumes the right of recovery. If this instruction was intended to be taken by itself, separate and apart from the other charges and instructions given to the jury, it would be obnoxious to the criticism which is made. The trial Judge, however, was careful to say to the jury that each and all of the charges and instructions, both his own and those given at the request of the plaintiff and defendant, were to be taken by the jury as constituting the law of the case. In his own charge he informed the jury "that the plaintiff in order to recover must sustain the case made by a

preponderance of the evidence." To the like effect was the first instruction given at the request of the defendant. In a number of cases this court has held that in determining the correctness of charges they should be considered as a whole. Knight v. State, 44 Fla. 94, 32 South. Rep. 110; Mathis v. State, 45 Fla. 46, 34 South. Rep. 287; Gray v. State, 42 Fla. 174, 28 South. Rep. 53; Richard v. State, 42 Fla. 528, 29 South. Rep. 413. The instruction objected to was intended simply to guide the jury in determining the amount of the damages, and it is not contended that from this standpoint it was illegal or improper. Taking the charges and instructions as a whole we do not think the jury could have been misled by this particular one.

Assignment No. 14 is based on the refusal of the trial judge at the request of the defendant to instruct the jury to find a verdict for it. As we are of opinion there was evidence in this case upon which the jury, if they believed it, could properly find a verdict for the plaintiff, there was no error in refusing this peremptory instruction.

Assignments Nos. 15 and 16 are based on the refusal of the court to give instructions Nos. 3 and 5 requested by defendant. These instructions were to the effect that Sloan assumed the risks ordinarily incident to the service in which he was engaged, and if proper at all under the evidence in the case, were fully covered by instruction No. 4 given at the request of the defendant.

Assignments Nos. 17 and 18 are based on the refusal of the court to give instructions Nos. 6 and 7 requested by the defendant. No. 6 is as follows: "Under the law, a master is required to exercise ordinary and reasonable care to provide a reasonably safe place for the servant to do the work he is engaged to perform, and if you find from

the evidence in this case that the place provided for Henry Sloan to work in was reasonably safe for the work he was engaged to perform and that his death was caused by reason of the character of the place in which he was working, then the plaintiff cannot recover in this case, and your verdict should be for the defendant." No. 7 was the counterpart of the foregoing, and was to the effect that if the place in which Sloan was to work was not reasonably safe, and he became acquainted with it, it was his duty to leave the employment of the master, and if he did not do so, and was injured by reason of the place not being reasonably safe, his widow is not entitled to recover. The vice of these two instructions is that they ignore the case made by the declaration, and the evidence. The right of the plaintiff to recover does not depend *alone* upon the question whether the place in which he was injured was ordinarily safe or unsafe. The gist of the case of the plaintiff is that her husband was killed by a current of electricity suddenly and without notice turned into a dead wire he was assisting in splicing, upon the request of the line foreman. There was no evidence to show that the place in which this is alleged to have happened was ordinarily unsafe. The instructions ignored these features of the case and were properly refused. In the case of Florida Ry. & Nav. Co. v. Webster, 25 Fla. 394, 5 South. Rep. 714, this court held: "It is proper to refuse instructions as misleading, when they are based on the theory of a party as to facts in evidence, and ignore the legal effect of other facts applicable to the relation and rights of the parties."

The 19th assignment is based on the refusal of the court to give instruction No. 9 requested by the defendant. It is as follows: "If you believe from the evidence in this

case that Henry Sloan, through the negligent turning on of the electric current while he was at work splicing a broken wire, received an electric shock that caused his death, and that the current of electricity was not received by direct contact with the wire, but was received by contact with L. T. Smith, through whose body the current passed to reach him, then the plaintiff cannot recover under the pleadings in this case, and your verdict should be for the defendant." It is contended that if the facts were as predicated in this instruction, there would be a fatal variance between the declaration and the proof, and the plaintiff could not recover. It is sufficient to say, in regard to this contention, that the first count of the declaration does not allege that Sloan was killed by direct contact with the wire. It alleges that the "defendant, failing, &c., negligently and carelessly caused the electric power in said premises, and which was under the control and operation of the defendant, to be suddenly turned on, whereby and by reason of the sudden turning on of said electric power, the deceased received an electric shock, from the effects of which electric shock, the said Henry J. Sloan died." Even if it be true that Sloan received the shock through Smith, there is no variance between this count and the evidence.

The 20th assignment is based on the refusal of the court to give instructions No. 10 requested by the defendant. What we have said with reference to the 17th and 18th assignments is applicable to this, and it was properly refused.

The 21st assignment is based on the refusal to give instructions No. 11. The gist of this is that under the circumstances of this case it was Sloan's duty to give notice to the persons in charge of the machinery of the defend-

ant that he was about to engage in the dangerous work of splicing the broken wire. Whether such action on his part was necessary it is unnecessary to inquire. There was no plea in the case setting up such negligence of Sloan. The only issue before the jury was the negligence of the defendant, which was raised by the plea of not guilty, the only plea interposed by the defendant. Rule 71 of the Rules of the Circuit Court in Common Law Actions provides that "in actions for torts the plea of not guilty shall operate as a denial of the breach of duty or wrongful act alleged to have been committed by the defendant, and not of the facts stated in the inducement, and no other defence than such denial shall be admissible under that plea; all other pleas or denial shall take issue on some particular matter of fact alleged in the declaration. And Rule 72 provides "all matters in confession and avoidance shall be pleaded specially as in actions on contract." Louisville & Nashville Railroad Co. v. Yniestra, 21 Fla. 700; City of Orlando v. Heard, 29 Fla. 581, 11 South. Rep. 182; Morris v. Florida Cent. & P. R. Co., 43 Fla. 10, 29 South. Rep. 541.

The 22nd assignment is based on alleged error in the overruling the motion for a new trial. The only grounds of this motion argued here are, first, that there is no evidence to show any negligence upon the part of the defendant, and, second, that there is no evidence that the death of Henry J. Sloan was caused by an electric shock. In 2 Cooley on Torts (3rd ed.) p. 1102, there is a very succinct statement of the law relating to a master's responsibility to a servant. The author says these duties have been very comprehensively stated in a recent case as follows: It is the personal and absolute duty of the master to exercise reasonable care and caution to provide his servants with

a reasonably safe place to work, reasonably safe tools, appliances and instruments to work with, reasonably safe materials to work upon, suitable and competent fellow servants to work with them, and to make needful rules and regulations for the safe conduct of the work; and he cannot delegate this duty to a servant of any grade so as to exempt himself from liability to a servant who has been injured by its nonperformance. Whoever he entrusts with its performance, whatever his grade or rank, stands in the place of the master, and he is liable for the negligence of such employee to the same extent as if he had himself performed the act or been guilty of the negligence." See Mast v. Kern, 34 Ore. 247, 54 Pac. Rep. 950, 75 Am. St. Rep. 580, and instructive note on page 584, where the fellow servant doctrine is learnedly discussed, and where it is stated to be law that it is the nature of the duty intrusted to an employee or the capacity in which he acts, and not his grade or rank which determines the liability of a master.

It is not only the duty of the master to exercise ordinary care and diligence to provide a reasonably safe place in which the servant is to work, but to use ordinary care and diligence to keep it safe. 2 Cooley on torts, *supra*, 1112-1113. In the same volume on page 1492 it is said: "Electricity is an invisible, unpalpable force highly dangerous to life and property, and those who make, sell, distribute, use or handle it are bound to exercise care in proportion to the danger involved." We do not deem it necessary to go into an examination of the numerous cases illustrating and enforcing the foregoing principles. Whatever qualifications they may have, have no application to the facts of this case. Applying them to the facts which we have here-

19—S. C.

tofore stated the evidence tended to prove, we cannot doubt that it was the duty of the defendant to use reasonable care to see that the current of electricity was not turned upon the wire while the employes of the defendant were working upon it in order to splice it. The evidence does not show that any care or precaution of any sort was taken by the defendant. It seems to us clear that the jury were warranted in finding that the defendant was negligent. As to whether Sloan's death was caused by an electric shock, there was a conflict in the evidence. Some of the expert witnesses testified that a 500 direct current voltage, such as is used on trolley lines, was comparatively harmless. One of the experts, Mr. Nash, introduced by the defendant, testified that he had only known of two deaths produced by such voltage. Dr. Perry, a witness for the defendant, testified that he was called to see Sloan on the day he died immediately after he was taken out of the power house; that he did not know him before that time; that he examined his body at the undertaker's some hours after he died; that he found scars on his person indicating that he had tertiary syphilis; that he was emaciated and in the witness' opinion he died from heat exhaustion. Another physician who testified for the defendant stated on cross-examination that he had known Sloan for sixteen years; that when he first became acquainted with him he was suffering from grippe, which resulted in tuberculosis; that he advised him to change his climate, and Sloan went away and was gone some years; that he had been his physician since his return to Jacksonville; that he had had sores on his legs which were the result of cold and burns; that he had never observed any symptoms of syphilis; that he had had no serious sickness in several years. Several witnesses who knew

Sloan testified that he was about the time of his death, and had been for some time, in fair health; that he lost little or no time from work; and his brother testified that while thin from working in a warm place, he was very muscular and strong. There was no autopsy upon the body of Sloan, and the jury were left to determine the cause of his death without the aid of such an investigation. If Sloan was in reasonably good health, and there was evidence to that effect, it seems somewhat remarkable that death should have come upon him from heat exhaustion, at the very moment when a current of electricity was passed through his body, which the evidence also tended to prove. We think the question of whether Sloan was killed by an electric shock was, under the evidence in the case, one entirely for the determination of the jury. Mahan, Adm. v. Newton and Boston Street Ry. Co., 189 Mass., p. 1, 75 N. E. Rep. p. 59, S. C. 19 Am. Neg. Rep. 15.

We find no reversible error in the record and the judgment of the lower court is affirmed, at the cost of the plaintiff in error.

TAYLOR and PARKHILL, JJ., concur.

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.